I guess the court... Who's up to bat here? I am, Your Honor. Well, I guess the court has a question with respect to the impact of the bankruptcy that was declared yesterday. I don't know who was going to respond to that. I may respond to that, Your Honor. Bradley Ellis on behalf of the CIT Group Commercial Services, Inc. The entities that have filed for bankruptcy are the CIT Group Commercial Services, Inc. and the CIT Group Commercial Services, Inc. and CIT Funding, LLC. None of the operating entities, which is the entity in this case, is in the bankruptcy. So it should have no effect on this proceeding. Thank you. Thank you. And as the court can appreciate, that came as a great relief to me this morning when I learned that. If it may please the court, I'm Burton McCullough and I represent SOCHE, the plaintiff in this matter. In preparing for this, in reviewing the bankruptcy briefs, there were three points that I felt some anxiety about making sure that I've made to this court to make sure that the record is clear. The first one has to do with cases trying to distinguish the timber falling case from our case. Timber falling was decided by the District Court in Oregon and in that case, it was one letter of invoices at different times, all were paid by the bank. The letter of credit then apparently expired and the beneficiary submitted several more invoices for payment and they were all paid as well. Then a few more additional invoices were presented and the bank dishonored those claiming they were late. And the court in the final issue of fact as to whether or not the beneficiary could rely upon the past waivers for the future waivers. And Chase in their brief says that that is a distinguishable case from ours, that that's not what happened here, that in our case, all of the past waivers occurred with respect to prior letters of credit. They are terribly mistaken. There are three letters of credit at issue in this case. On the first one, in the last ten days of March, there were three letters of credit. There were a number of, there were 13 separate invoices that were presented covering 21 purchase orders for goods for almost a million dollars. And everyone had discrepancies. CIT and the applicant waived all the discrepancies and they were all paid. After that, that same week, another invoice was presented, had the same discrepancies. It was dishonored. CIT said, no, we're not going to honor those anymore. We're not going to waive those anymore. Wasn't there a contract that said that waiver at one stage wouldn't constitute a waiver at a later stage or something? In the letter of credit, which I guess is the question, is whether that's a contract or not. But anyway, in the letter of credit, it said that? In the letter of credit, it says you cannot rely upon past waivers for future waivers. No question about that. Here we have And there's some case law to support that, right? There's case law on both sides. There's case, well, let me back up. I don't know of a case that identifies that language in a letter of credit and then says you can and cannot be a waiver. So this is a case, if you will, of first impression, at least if you're going to consider that factor. But there are cases in which, just like the There is an issue of fact as to whether or not a beneficiary can rely upon past waivers for a future waiver. There are lots of cases which talk about the fact that you can have a waiver. The question is, under the circumstances of the particular case, do you have a waiver? And in this particular case, of the three letters of credit where there were dishonored items, in two of them, there were multiple invoices presented that were discrepant, where they waived the discrepancies, and then in the same letter of credit with the same deficiencies in the presentations, they dishonored them. Then there was the third letter of credit which was issued that same week in which they're waiving all these discrepancies and paying all these invoices. That letter of credit was issued, they presented additional, or they presented their invoices there, and they dishonored all the goals. But I think that the important thing here is that this has been a pattern that's been going on for almost two years. Over 40 letters of credit, hundreds of presentations, discrepancies in virtually every one of them, and they were all waived until we get to the very end. I think that there was some planning and scheming at the very end, but whether there was or there wasn't a design here, the fact is the beneficiary had good cause to rely upon the past waivers. That had been the workings of this matter for some time. So the letter of credit law about strict compliance and future waivers, past waivers not requiring future waivers, is fairly robust. I'm wondering if there's a controlling California case. I know there are lots of cases cited from all over the place, but I was looking for a controlling California case that would say, notwithstanding the very strong letter of credit law that we protect about strict compliance and et cetera, in certain circumstances we would say you've waived that. I have read every case there is, I think. I guess I should be somewhat careful there, but that's part of my job of writing my book. I think I have read every case there is on this issue, and almost every case without exception will say that there can be a waiver, but generally they find that there is not a waiver. I think that that's a good rule. The general rule ought to be that a beneficiary cannot rely upon past waivers for waivers in the future. But some cases have found that there was a waiver, like in the falling timber case. They said, well, we think that there's an issue here. No, I saw a couple of cases, and I haven't read every case, so I don't know. But it seemed the ones that I looked at seemed to say, well, in this very transaction, the issuer said I'll waive discrepancies. And then the presentation was made, and I said, no, I won't. That seemed to be the only exception I saw, and I didn't see that sequence of events in this case. Am I right on that, that it was only in this very transaction the issuer said I'll waive a discrepancy? No, no. There are other cases which none of the cases have been real specific about the rule. I think that it's something that they have had to decide, if you will, and as a result, they've kind of scripted that. I think that this Court has an opportunity to really clarify this issue. What is the law here that we're clarifying? Whether or not, well. The law of what jurisdiction? Well, we are talking about a uniform commercial code. We're talking about the uniform customs and practices. So if this is something that could apply throughout the world, actually. California law? Pardon? I'm sorry? Are we talking essentially about California law or what? We have the California commercial code, which is exactly the same throughout the United States, and we have the uniform customs and practices, which is uniform throughout the world. And so whatever this Court decides, it's going to be very important for banks and beneficiaries to look at to see whether or not there is such a thing as a waiver of future compliance, strict compliance in the future based on past waivers. But we are looking at California law, right, and what the California courts have held on their California commercial code, correct? Yes, and I'm not aware of a case in California that decides this issue. We're not very good at clarifying California law. That isn't really our primary function here. Well. We're trying to predict what the California, we're trying to say what the California courts have decided or what they will decide. Well, most of the cases arise in the federal court, not in the state court. And so we have federal cases all over the place that talk about whether or not you can have this waiver issue. But I think the important thing, and this is the last point I'll make on this issue unless the Court has some other questions. The important thing is that there is a concept of waiver, and the Court must look at the facts to see if, in fact, there was a waiver. Because otherwise we have a rule which says you can never have a waiver. We have a rule that says you can never have a waiver, regardless of the facts. And we submit that there's never been a case that I've ever seen that has the compelling facts in this case. And in a nutshell, the compelling fact in this case, if you were writing our opinion for us to clarify the commercial code, that is what? That there was a waiver of strict compliance with the letter of credit based upon past waivers. Past waivers. Given the whole history of this, of these people, CIT, Beach Patrol, Chase, and Sochei. They had a pattern, a course of doing business that was established over almost two years in which they all abided by it without exception. Nobody ever complained. Is it the two years that makes this different from every other case? I think that that certainly makes a big difference between this and some of the other cases in which they say, well, this, you had one waiver. No, we're not going to say that's enough for a second waiver. Well, I agree. If Chase had just honored one presentation and then the next one they dishonored, I wouldn't be standing here. But that's not the case here. We have a big history behind us. Do your authorities have language in the letter of credit similar to this where it says past waivers don't give you rise to a future waiver? I have not seen a case that said this language was in the letter of credit. I know that that is language standard in letters of credit, but no court has pointed it out. Maybe they started putting it in when courts weaseled on that. Well, that language has been there a long time, but I don't know. All I know is I haven't seen one. Well, we do have two other issues that I feel compelled to point out to the court. One is this idea of what is a presentment. So Shea has taken the position that we presented five invoices with their accompanying documents, and those are five separate presentations. Chase has taken the position that since there was also a draft prepared that had as a total dollar amount the sum of all five invoices, it was one presentment. No case has decided what a presentment means under the Uniform Commercial Code or under the Uniform Customs and Practices. And it was their burden to prove that it was one presentment instead of five separate presentments. So they presented declarations from two different experts. And your experts, the court either said it was inadmissible for the first expert and, second, there was no foundation. So what evidence other than that, the two experts that the district court disregarded, did you present to counteract the testimony of J.P. Morgan's, I guess it was, two experts? We, other than Professor White's declaration, we Which was inadmissible according to the district court. Right. And I'm not so sure that was the correct decision. But, nonetheless, the problem is, and this is my second point, the declarations by Josefa Paredes and Bogdanovich is irrelevant. It didn't speak to the facts of this case. And, in their brief, they compounded the problem because they said, in this case, there were multiple purchase orders presented for payment. Purchase orders are not presented for payment. Purchase orders are drawn up by the buyer to give to the seller to produce goods. Purchase orders are never presented for payment. They were never presented for payment here. In fact, there's not a single purchase order in the record. And we've got thousands of pages in this record. But, in their brief, they say multiple purchase orders were presented. The reason I think they did that is because in the declarations that you have referred to here, Paredes, for example, she says, there were multiple purchase orders combined with such and such. That is absolutely not true. There were no purchase orders. What she should have been talking about is when there are multiple invoices. She never mentioned invoices. She's an expert, and she knows the difference between an invoice, a draft, and a purchase order. The same thing with the other supposed expert's declaration. He talks about purchase orders being presented. Neither one of them talk about what do you do if you have multiple invoices, which are documents that banks pay against. None of them specify that. So, I think they missed the boat. Okay. Well, you have almost used your time if you want to reserve it. Thank you. One last point, and that is, was a draft required under the letter of credit? They're relying upon this little field and the swift message that bankers have, which says drafts outside. They say that means a draft is required. There are a lot of cases which say that bankers are not required to know business terms, like sour oil, sweet oil, certain types of yarn, or grapes, or whatever it might be. The same thing for a beneficiary. A beneficiary, a merchant man out there, is not required to know esoteric, hidden banking terms. In the letter of credit, there's a place that says documents required. If the letter of credit doesn't say a draft is required there, then the beneficiary, in my opinion, doesn't have to know that a draft is required, because in some protocol under swift, the banker thinks that there is one that's supposed to be required. Who prepares this draft? Pardon me? Who prepares the draft that's presented? The beneficiary will prepare the draft, and in this case, he prepared the draft, hoping that his bank, Fubon, would take up the draft and the documents, and then, and the draft is payable to Fubon, it's not payable to Sauchet, then the bank that takes it up and discounts it and pays the beneficiary would present it, and he'd pay it himself. But that didn't happen here. Fubon never took up the draft, and no draft was ever paid, but the invoices were paid. Thank you. You have more than your time. Thank you. Good morning, Your Honors. Again, if it pleases the Court, I'm Bradley Ellis on behalf of the CIT Group Commercial Services, Inc. Along with Chase, I'll be splitting the time for this side, and in terms of substance on the three issues that were raised by counsel, I'll be addressing waiver. Mr. Weichart would address the presentment and the draft points. Your Honors, the letter of credit regime depends upon predictability. It depends upon certainty. And if the Court were to accept the arguments that are urged upon it, the appellant makes, it would be injecting those uncertainty into the system. Appellant urges the Court to say, well, after a certain amount of time, after a certain amount of discrepancies being waived, that then there becomes an obligation to waive in the future. But how would an issuer, how would an applicant, how would a guarantor such as CIT know when it was bumping up against that point? What would it do to protect itself to avoid having an obligation to waive discrepancies in the future? And if there were that rule, wouldn't there be a perverse incentive for applicants, issuers, and guarantors to refuse to waive discrepancies in the future because they would realize that they have to refuse to waive discrepancies, otherwise they're going to get into this box. Has any Court ever adopted such a rule? No. No. I've not seen any. The only hint that past waivers could result in future waivers is in this timber falling case out of the District of Oregon. The facts of that case, though, the Court does make that statement, but that has to be seen in light of the facts in that case where there was a statement by a bank employee, when you read the facts, not to worry about it, that the drafts would be honored, the present ones would be honored. And also, you have to look at the underlying case, the Third Circuit case, that the Court in timber falling relies upon for support for this statement. And that case doesn't have anything at all to do with this issue of past waivers, whether that can ever result in a waiver on future discrepancies. It simply stands for the mundane proposition that a discrepancy can be waived. Now, Suchet also argues that CIT isn't really an applicant for a range of reasons. Can you address that? Yes. It's clear that it is under California Commercial Code 5102A2 that it falls squarely within the definition of an applicant. And you say that Suchet doesn't dispute that. Is that correct? That wasn't disputed that you meet the definition? They don't dispute that that's the definition. What they do say is that that definition is trumped by the UCP. They cite to a particular provision in the UCP, but that, we submit, is not a definition at all until that the UCC prevails in this instance. 5102 is the governing principle because it is a definition of applicant and CIT falls within that definition. So there is no implied contract here. It cannot be based upon waivers alone. And that's the linchpin, we're told, of the case. And without the implied contract, then the case falls apart. At this point, I've ceded my time to my colleague, Mr. Weikart, unless there are further questions for me. Dr. Gabiani, thank you. Thank you. Good morning, Your Honor. May it please the Court, George Weikart representing JPMorgan Chase Bank, N.A. I do initially want to go once more into the breach on the waiver argument. The essence of the law here is to make the job of the issuer of the letter of credit reviewing documents presented a ministerial one, a simple one. You are only supposed to look at the documents presented and determine whether they strictly comply with the terms of the letter of credit. You are not supposed, that's the strict compliance rule. Then there's the independence rule. You're not supposed to look at anything else. So they've made it a simple and predictable rule. And to introduce this waiver principle in here would make it a judgment call, and that's why the Court should not accept it. And there's an overwhelming weight of authority on our side, and a real failure on the part of the appellant to identify any case that squarely adopts the waiver rule in this present context. Let me go on to the two other points that Mr. McCullough raised, having to do with the eighth presentment, as it's called in our papers, and whether it should be, quote, disaggregated. And the issue here is whether documents submitted under the cover of a single draft in the total amount of the attached documents is to be considered a single presentment. The undisputed evidence was that that is standard international banking practice. This is something, the undisputed evidence is that this is something that's totally up to the beneficiary. The beneficiary can submit a draft with each shipment, or it can aggregate them together and put five shipments under one draft. It's completely up to the beneficiary if you That's the option of the beneficiary to decide one or ten, whichever. That's correct. And if you want to reduce the chance that you're going to have a discrepancy, you'll put one draft with each shipment. They knew that. That's in the record. They admitted that they had that option and that they could indeed have one draft with each shipment. You don't even have to send a draft. It's not called for. Well, that's another issue on which the evidence is undisputed, Your Honor. The undisputed evidence by the two experts that testified on this is that if you put in the swift form on which these letters of credit were written, in field 42, drafts at site, which is what each of them say, that means that a draft is required in standard international banking practice. There are two expert witnesses that say that, and there was no testimony, no evidence whatsoever by a competent expert to the contrary. Why isn't that listed in required documents? And I looked at your brief and the expert testimony carefully, and I couldn't understand the analysis as to why that field required a draft. Yes. The rule in the instructions for completing the documents under the swift system is that you put the requirement of a draft in field 46 where the other documents, such as purchase order, inspection certificate, customs clearance, if the draft is payable to the applicant. That was not the case here. You only put it there if it's payable to the applicant. Again, that is in the directions for filling out the swift form, and that is the undisputed expert testimony as to international banking practice. You do not put it there in field 46 if the draft is payable to the beneficiary or to the beneficiary bank. And again, when you require a draft, you put it in field 42C, which was done in every single letter of credit at issue here. So we're talking about an issue here where the evidence is undisputed and there's no law, no law has been presented to the Court that the appellant's interpretation is correct. And getting back to the one presentment issue that I started with, again, we're talking about undisputed evidence. The only evidence presented by the appellant was the declaration of the law professor and the declaration of the owner of Sauchet, both of which were incompetent. And there's one case, there's a good case on precisely this issue, the Mueller case from the First Circuit, which says precisely that. When you submit documents together under one draft, that's considered as one presentment. And if there are any discrepancies in any of the documents, you have to reject the whole draft and the whole presentment. Is there anything different about the presentment that they had in the First Circuit case than what you had here? Not that I can tell, Your Honor. It looks like the same issue we have here. I have nothing further unless the Court has questions for me. Thank you. Are there any further questions of the appellant? Thank you. And the case just argued is submitted for decision. We'll hear the last case in the calendar for argument.
judges: Siler, Schroeder, Ikuta